UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APOLLO JOHNSON,

                                     Case No. 1:20-cv-670

        Plaintiff,

                                     Hon. Paul L. Maloney

v.

BARBARA HOOVER, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C § 1983 by Apollo Johnson, a state prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff filed this complaint against Physician's Assistant Barbara Hoover, Dr. Jonathan Decker, Registered Nurse (RN) Luke Rexford, RN Tim Versalle, and Resident Unit Manager Jenny Winger. This matter is now before the Court on defendant Rexford and Versalle's motion for summary judgment for lack of exhaustion (ECF No. 27).

     **I.**      **Background**

Plaintiff alleged that he was shot back in 1997 and is "a wheelchair bound prisoner" at the MDOC. Compl. (ECF No. 1, PageID.4). Plaintiff set forth the following claims against defendants RN Rexford and RN Versalle.

> On July 15, 2018, Plaintiff was taken by wheelchair from segregation to health care services so that he could be seen by Defendant Rexford for several health conditions. Plaintiff was restrained in the wheelchair when he arrived at health care services. Plaintiff alleges that Defendant Rexford ordered him to move into a regular chair, which presumably was not possible while Plaintiff remained restrained. Plaintiff informed Defendant Rexford of his inability to comply.

1

> Defendant Rexford ended the appointment, apparently without examining Plaintiff. Plaintiff asserts that Defendant Rexford also refused to examine him on two other occasions. On the second occasion, Defendant Rexford allegedly told Plaintiff, "S[i]nce you want to write grievances[,] you will never get examined." (*Id.*, PageID.11.)

Opinion (ECF No. 7, PageID.55-56).   Plaintiff identified three specific occasions when RN Rexford refused to examine him: July 15, 2018 (dizzy spells, trouble breathing, headaches, periodic nose bleeds); August 1, 2018 (a wrist ailment); and October 11, 2018 (a fungus infection). *See* Compl. (ECF No. 1, PageID.10-11).

> Plaintiff alleged two incidents involving RN Versalle.

> Defendant Versalle allegedly refused to see Plaintiff for a health care appointment on July 25, 2018, unless Plaintiff would walk to health care services. Later, Defendant Versalle refused to examine Plaintiff's skin rash because Defendant Versalle "was not going to waste time" because Plaintiff would file a grievance whether he looked at Plaintiff's skin or not. (*Id.*, PageID.9.) Defendant Versalle also allegedly told Plaintiff that he had himself to blame for his pain and treatment because he had a "big mouth." (*Id.*)

Opinion at PageID.56.   Plaintiff identified two specific occasions when RN Versalle refused to examine him: July 25, 2018 (at plaintiff's cell with instructions to walk to health services); and October 16, 2018 (skin rash/fungus condition).   Compl. at PageID.9.

Based on these allegations, plaintiff claims that defendant Rexford retaliated against him in violation of the First Amendment and was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment on July 15, 2018, August 1, 2018, and October 11, 2018.   Plaintiff also claims that defendant Versalle retaliated against him in violation of the First Amendment and was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment on July 25, 2018, and October 16, 2018.   *See* Opinion at PageID.56, 64-65.   Plaintiff seeks compensatory and punitive damages.   *Id*. at PageID.56.

## II.    Defendants' motion for summary judgment

### A.    Legal standard for summary judgment

Defendants seek summary judgment because plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).   "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

**B.      Failure to Exhaust**

**1.      Exhaustion requirement**

The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996)

(PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42

U.S.C. § 1983 "or any other Federal law" must first exhaust available administrative remedies.

*See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731

(2001).   A prisoner must exhaust available administrative remedies, even if the prisoner may not

be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*,

534 U.S. at 520; *Booth*, 532 U.S. at 741.   One reason for creating prisoner grievance procedures

under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes
> concerning the exercise of their responsibilities before being haled into court.   This
> has the potential to reduce the number of inmate suits, and also to improve the
> quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).   In order to properly exhaust administrative remedies,

prisoners must complete the administrative review process in accordance with the deadlines and

other applicable procedural rules.   *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to

'properly exhaust.'"   *Jones*, 549 U.S. at 218.   Finally, even if a prisoner complies with the

grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as

measured against the claim alleged in the prisoner's complaint.   *See Bell v. Konteh*, 450 F.3d 651,

654 (6th Cir. 2006).

**2.      MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances.

4

*See* Policy Directive 03.02.130 (effective July 9, 2007).   A prisoner must first attempt to resolve

a problem with the staff member within two business days of becoming aware of the grievable

issue, unless prevented by circumstances beyond his or her control.   *Id*. at ¶ P.   If the issue is not

resolved, then the grievant may file a Step I grievance on the prescribed form within five business

days after the grievant attempted to resolve the issue with appropriate staff.   *Id*. at ¶¶ P and R.

The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.   Information provided is to be
> limited to the facts involving the issue being grieved (i.e., who, what, when, where,
> why, how).   Dates, times, places and names of all those involved in the issue being
> grieved are to be included.

*Id*. at ¶ R (emphasis in original).   The prisoner must send the Step I grievance to the appropriate

grievance coordinator.   *Id*. at ¶ V.   If the prisoner is dissatisfied with the Step I response, or does

not receive a timely response, he must request the appropriate form and send it to the Step II

Grievance Coordinator.   *Id*. at ¶ BB.   Finally, if a prisoner is dissatisfied with the Step II

response, or does not receive a timely response, he must send a completed Step III grievance, using

the appropriate form, to the Grievance and Appeals Section.   *Id*. at ¶ FF.

### C.    Discussion

Defendants reviewed plaintiff's extensive grievance history as set out in an MDOC

Step III Grievance report, which lists 91 grievances filed by plaintiff since 2013 (ECF No. 28-3,

PageID.136-158).   Defendants also submitted about 100 pages of plaintiff's grievances which

relate to the timeframe of his claims (ECF No. 28-3, PageID.159-213; ECF No. 28-4, PageID.214-

258).   Based on this history, there is no evidence that plaintiff properly exhausted his First and

Eighth Amendment claims against defendants RN Rexford and RN Versalle.

As discussed, the incidents involving RN Rexford occurred on July 15, 2018, August 1, 2018, and October 11, 2018.   There is no grievance related to an incident on July 15, 2018, when plaintiff complained that he was taken by wheelchair from segregation to health care services to assess him for "dizzy spells, trouble breathing, headaches, and period nose bleeds." Compl. at ¶ 29, PageID.10.   Defendants point out that plaintiff filed a grievance one week *before* the alleged incident involving a different complaint, *i.e.*, that RN Rexford refused to treat him for a fungus infection.   *See* Grievance MCF-18-07-0717-028I ("717") (date of incident July 8, 2018) (ECF No. 28-4, PageID.237).

There is no record that plaintiff filed a grievance complaining that RN Rexford refused to examine him for a wrist ailment on August 1, 2018.   This claim is set forth in ¶ 31 of the complaint:

> On or about August 1, 2018, Plaintiff had an appointment with Defendant Rexford to be evaluated for acute and excruciating pain in Plaintiff's wrist sustained by a fall from Plaintiff's wheelchair. Defendant Rexford refused to assess Plaintiff's injury.

Compl. at PageID.10.

A few weeks later, on August 17, 2018, plaintiff filed a grievance related to an incident on August 12, 2018.   Plaintiff stated that "Health Care Service Staff", including defendants Rexford and Versalle, "acted in concert to 'Retaliate Against Grievant' by refusing to treat grievant adequately as requested . . ."   *See* Grievance MCF-18-08-810-12Z ("810") (ECF No. 28-3, PageID.167) (emphasis in original).   Plaintiff claimed that "health service" engaged in retaliation be refusing to treat him and that filing grievances is a constitutional right, *i.e.*, "[i]t's called 'Protected Conduct', part of grievants [sic] 1st. [sic] amendment."   *Id*. (emphasis in original).   In responding to the grievance, RN Lamb stated that plaintiff does not describe his

injuries or provide any details about treatment he is seeking. *Id*. at PageID.166.   Lamb noted that

on August 4, 2018, "custody" contacted "Health Care" on plaintiff's behalf to report that "plaintiff

claimed to have fallen and broken his right wrist the previous night," that nursing staff evaluated

plaintiff and found "no acute objective abnormality", that plaintiff declined an analgesic for pain,

that plaintiff requested an ACE wrap for his wrist but failed to appear for his appointment on

August 6th, and that the only Health Care appointment plaintiff had on August 12th "was for a

monitored walking session – an appointment grievant refused."   *Id*.   A medical provider

evaluated plaintiff's wrist on September 12th with no acute finding noted, and an x-ray completed

on September 26th was normal.   *Id*.   While plaintiff filed Grievance 810 in August 2018, this

grievance did not address the alleged incident of August 1, 2018.

Finally, there is no evidence that plaintiff filed a grievance about an incident on

October 11, 2018, when RN Rexford allegedly refused to examine him for a fungus infection.   As

discussed, plaintiff's grievance claiming that Rexford refused to treat a fungus infection involved

an incident in July 2018.   *See* Grievance 717.

The incidents involving RN Versalle allegedly occurred on July 25, 2018, and

October 16, 2018.   Defendants note that plaintiff filed a grievance against RN Versalle related to

an incident on July 17, 2018, when Versalle allegedly refused to provide plaintiff with healthcare

services.   *See* Grievance MCF-18-07-0721-28I ("721") (ECF No. 28-4, PageID.232).   However,

Grievance 721 involved incidents which occurred eight days *before* the alleged July 25, 2018

incident:

> Grievant is filing this grievance complaint against Versalle – RN and health
> care staff for failure to treat or assess grievances [sic] numerous request [sic]
> through medical kites (injuries)! Health Service staff are denying grievant his
> treatment because of his "**inability**" to walk over to health service  .  .  .   If this

facility <MCF> can't accommodate grievant [sic] medical requirements, then why
is grievance here?

Furthermore, Grievance 721 was not properly exhausted.   This grievance was rejected at Step I

because plaintiff made "[n]o attempt to resolve", and the rejection was upheld at Steps II and III.

*Id*. at PageID.229, 231, 233.

Finally, there is no record of any grievance filed with respect to plaintiff's claim

that RN Versalle refused to examine him for a skin rash on October 16, 2018.

In his response, plaintiff fails to demonstrate exhaustion of any claims alleged in

this lawsuit.   Plaintiff claims that he exhausted grievances for denial of medical treatment against

defendants Rexford and Versalle, and explains away any deficiency with exhaustion by referring

to unspecified "'clerical errors' with the dates."   Plaintiff's Response (ECF No. 38, PageID.287).

While plaintiff attached over 80 pages of exhibits consisting of copies of grievances and other

papers (ECF No. 38-1 to 38-11, PageID.291-375), his response does not explain the significance

of the exhibits. Plaintiff also filed a paper (ECF No. 39) which provides some limited explanations

for the exhibits. While plaintiff refers to this paper as an "affidavit," it is neither an affidavit nor

an unsworn declaration as permitted under 28 U.S.C. § 1746; rather, it appears to be a continuation

of his response.

The gist of plaintiff's response is that defendants provided a "misleading" brief,

Plaintiff's Aff. (ECF No. 39, PageID.377).   Plaintiff relies on Grievances 810 and 721.

Plaintiff contends that contrary to defendants' brief, Grievance 810 refers to

retaliation, not a wrist injury. As discussed, *supra*, while Grievance 810 discussed retaliation with

an incident date of August 12, 2018, the grievance did not include any context for the alleged

retaliation, nor connect the alleged retaliation with any of the specific claims in this lawsuit.

Next, plaintiff contends that while there was an unspecified "clerical error," Grievance 721 referred to the incident with RN Versalle which occurred either on July 25, 2018 (*see* complaint) or July 17, 2018 (*see* grievance).   Plaintiff's complaint alleged that:

> On July 25, 2018, Defendant Versalle came to Plaintiff's segregation cell and asked Plaintiff if he wanted to walk over to health services to be evaluated by health care staff.   Plaintiff responding [sic] that it's impossible to do that without a wheelchair.   Defendant Versalle then stated, "That's not going to happen asshole."

Compl. at ¶ 26, PageID.9.

While plaintiff's complaint involved a meeting with RN Versalle at his cell on July 25, 2018, Grievance 721 involved an earlier incident date of July 17, 2018, related to defendant Versalle and "health care staff's" failure to treat and failure to assess grievances and medical kites. *See* Grievance 721 at PageID.232.   Furthermore, as discussed, *supra*, the grievance did not properly exhaust any claim because it was rejected.   Plaintiff does not address the rejection in any detail.   Rather, he criticizes the MDOC's grievance procedure, *e.g.*, he refers to eight of his grievances as being rejected "maliciously, sadistically, and deliberately" (emphasis omitted).   *See* Plaintiff's Aff. at PageID.380.

Based on this record, plaintiff did not properly exhaust his claims against RN Rexford and RN Versalle.   *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant's motion for summary judgment should be granted.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants RN Rexford and RN Versalle's motion for summary judgment (ECF No. 27) be **GRANTED** and that these two defendants be **DISMISSED** from this lawsuit.

9

Dated: July 6, 2021                              /s/ Ray Kent
                                                 Ray Kent
                                                 United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).