UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APOLLO JOHNSON,

        Plaintiff,

v.

BARBARA HOOVER, *et al.*,

        Defendants.

_____/

Case No. 1:20-cv-670

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C § 1983 by Apollo Johnson (sometimes referred to as "Johnson" or "plaintiff"), a state prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff filed this complaint against Physician's Assistant (PA) Barbara Hoover, Dr. Jonathan Decker, Registered Nurse (RN) Luke Rexford, RN Tim Versalle, and Resident Unit Manager Jenny Winger. All defendants have been dismissed except for PA Hoover and Dr. Decker. This matter is now before the Court on defendants Hoover and Decker's motion for summary judgment (ECF No. 46).

        **I.**        **Background**

Johnson alleged that he was shot in 1997 and is "a wheelchair bound prisoner" at the MDOC. Compl. (ECF No. 1, PageID.4). The Court previously summarized Johnson's relevant claims against PA Hoover and Dr. Decker as follows:

> Soon after his arrival at MCF [Muskegon Correctional Facility], on April 26, 2018, Plaintiff met with Defendant Hoover to discuss his chronic care needs. Plaintiff told Hoover that MCF was not wheelchair accessible, and Defendant Hoover allegedly responded that Plaintiff could "handle it." (Compl., ECF No. 1,

1

> PageID.5.) Plaintiff claims that four days later, on April 30, 2018, Defendant Hoover refused to see him for his scheduled appointment unless he left his wheelchair outside of her office and walked in. Plaintiff does not specify in the complaint whether Defendant Hoover saw him for the appointment and, if so, under what conditions. Nearly two months later, on June 14, 2018, Defendant Hoover rejected Plaintiff's requests to extend his back-brace accommodation and for a different pain medication after Plaintiff indicated that Tylenol had not sufficiently alleviated his chronic pain. Defendant Hoover allegedly told Plaintiff that she did not care if he suffered while at MCF and that these were the consequences for reporting on health care staff. Plaintiff asserts that on June 18, 2018, Defendant Hoover repeated a similar statement adding that Plaintiff "should know by now that staff are going to stick together." (Compl., ECF No. 1, PageID.6.)
>
> Plaintiff's allegations relating to the three other health care staff defendants follow a similar trend. Defendant Decker allegedly ordered prison staff to confiscate Plaintiff's wheelchair on July 11, 2018, and Plaintiff was put into segregation at the time. Plaintiff alleges that Defendant Decker stated, "This guy is trouble. He's making all sorts of noise; claiming the facility is not wheelchair accessible or barrier-free." (*Id.*, PageID.8.) Plaintiff asserts that for the approximately 10 days he was in segregation, due in part to his immobility and lack of a wheelchair, he was deprived of food, prescribed medication, and sanitary conditions.

Opinion (ECF No. 7, PageID.54-55).   Johnson also alleged that on September 12, 2018, PA Hoover refused to provide him with adequate pain medication, refused to refer him to a specialist, and refused to re-issue a back-brace.   Compl. at PageID.7.

Johnson alleged that PA Hoover and Dr. Decker retaliated against him in violation of his First Amendment rights when they refused either to treat or to examine Johnson after he filed grievances, kites, and verbal complaints, and that they were deliberately indifferent to his medical needs by failing to examine him and denying him medical care.   *Id*. at PageID.62-63. Johnson's claims are based on four incidents: April 30, 2018 (PA Hoover refused to see him); June 14, 2018 (PA Hoover rejected requests to extend his back-brace accommodation and for a different pain medication, and stated to Johnson that she did not care if he suffered at MCF); June 18, 2018 (PA Hoover made a similar statement); July 11, 2018 (Dr. Decker ordered prison staff to

2

confiscate Johnson's wheelchair and said that Johnson "is trouble"); and, September 12, 2018 (PA Hoover refused Johnson medication, a referral to a specialist, and a back-brace). Johnson seeks compensatory and punitive damages. *Id*. at PageID.56

## II. Defendants' motion for summary judgment

### A. Legal standard for summary judgment

Defendants seek summary judgment for lack of exhaustion of administrative remedies and on the merits. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment,

3

the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.     Failure to Exhaust

#### 1.     Exhaustion requirement

The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 "or any other Federal law" must first exhaust available administrative remedies. *See* 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to

'properly exhaust.'" *Jones*, 549 U.S. at 218. Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).[1] A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id*. at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id*. at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id*. at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id*. at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id*. at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id*. at ¶ FF.

---

[1] While defendants correctly argue the motion under the 2007 version of the Policy Directive, the exhibit attached to their motion is a copy of the 2019 version of the Policy Directive (ECF No. 46-6).

5

### C.    Discussion

In their brief, defendants reviewed plaintiff's extensive grievance history as set out in his MDOC Step III Grievance Report (listing over 90 grievances filed between January 1, 2013, and September 11, 2020) (ECF No. 46-7, PageID.614-737) and demonstrated that Johnson did not properly exhaust any grievance related to his First and Eighth Amendment claims alleged against PA Hoover and Dr. Decker.   Defendants' Brief (ECF No. 46, PageID.437-439).

In his response, Johnson contends that he exhausted the following grievances: retaliation claims against PA Hoover and Dr. Decker in Grievance MCF-1809-810-12z ("810"); claims against PA Hoover as set out in a May 3, 2018 Memorandum (ECF No. 56-16); claims against PA Hoover in MCF-1808-786-28E ("786"); retaliation claims against PA Hoover in MCF-1809-890-28T ("890"); and claims against Dr. Decker for confiscating his wheelchair in Grievances MCF-16-07-727-11G ("727") and MCF-1808-787-28E ("787").   Response (ECF No. 56, PageID.827).   The Court will review the grievances presented by Johnson.

1. **Grievance 810**

Grievance 810, dated August 17, 2018, relates to an incident on August 12, 2018, in which Johnson claims that PA Hoover, Dr. Decker, and others engaged in "Deliberate, Malicious, & Sadistic retaliation" by refusing to treat him.   Grievance 810 at PageID.646. Johnson's lawsuit does not allege that defendants failed to treat him for a serious medical need on August 12, 2018.   In this regard, Johnson's grievance did not even state what occurred on that date.   A supplemental grievance response notes that during an interview, Johnson indicated that he "is being denied adequate treatment for a wrist injury."   *Id*. at PageID.647.   The investigation established that a health care request form was received from Johnson on August 13, 2018, that

6

the Health Services scheduled Johnson for an appointment on August 14, 2018, but when Johnson presented himself for the appointment, he refused treatment. *Id*. The MDOC denied the grievance because Johnson refused to be evaluated by Health Services. *Id*. The grievance was denied at Steps II and III. *Id*. at PageID.643, 645. While the grievance involved some type of incident on August 12, 2018, whatever occurred on that date is not part of this lawsuit.

### 2.    May 3, 2018 memorandum

Johnson refers to a memorandum from May 3, 2018, in which an unprocessed grievance was returned to Johnson because it did not meet the requirements of the Policy Directives. According to the grievance, on April 30, 2018, PA Hoover failed to evaluate or examine him, allegedly stating "[i]f prisoner does not walk into my office, I will not see Mr. Johnson." Unprocessed Grievance (ECF No. 56-16, PageID.867). After filing the grievance, MDOC personnel instructed Johnson to correct the deficiency in the grievance form, *i.e.*, "attempt to resolve your issue" and to "allow staff time to respond." *See* Memorandum (May 3, 2018) ("Grievance Form Correction Required to Process") (ECF No. 56-16, PageID.866). In his response, Johnson states that he re-submitted the grievance and it "disappeared." There is no evidence to support Johnson's conclusory statements and no evidence that Johnson filed or exhausted a grievance related to the April 30, 2018 incident.

### 3.    Grievances 727 and 787

Johnson cites Grievances 727 and 787 to demonstrate that he exhausted his claims against Dr. Decker for confiscating his wheelchair on July 11, 2018. Response at PageID.827. Johnson states that he "sent the grievance back to the deputy warden for processing & the grievances disappeared." *Id*. In support of his claim, Johnson submitted a conclusory

7

declaration that "Plaintiff filed two separate grievances in regard to the herein facts & the first grievance disappeared & when Plaintiff filed a second one it was rejected." Johnson Aff. (Decl.) (ECF No. 56, PageID.829).

As an initial matter, Grievance 727 does not involve Dr. Decker. Johnson filed this grievance against grievance coordinator Burns [Barnes], with an incident date of July 19, 2018. Johnson stated that grievance coordinator Barnes did not provide Step I receipts for the seven grievances Johnson filed against healthcare for confiscating his wheelchair. Grievance 727 at PageID.691. After investigation, the grievance was denied, with a determination that Step 1 receipts were sent out on all grievances except those which were rejected. *Id*. at PageID.692.

Grievance 787, dated July 12, 2018, relates to an incident of July 11, 2018, when Dr. Decker allegedly confiscated Johnson's wheelchair.[2] Grievance 787 at PageID.696. The grievance was rejected as untimely because it was not received until August 15, 2018. *Id*. at PageID.697. In his Step II appeal, Johnson provided no explanation for the delay, other than to state that "this grievance is being reject [sic] under fraudulent pretenses," and that the grievance should have never been rejected "because grievant tried to rectify the issue on the same day the wheelchair was rejected." *Id*. at PageID.694. The rejection was upheld at Steps II and III. *Id*. at PageID.693, 695. In short, the rejected Grievance 787 was not properly exhausted.

---

[2] Johnson's claim appears to arise from the following Clinical Progress Note (July 11, 2018) (ECF No. 46-2, PageID.561):

"Patient taken to [segregation] via WC and he had the walker with him also. Patient was instructed via Dr. Decker that the WC will be DC'd as not medically needed. Patient squared up to the segregation cell and pushed self up out of WC using bil legs without difficulties. He adjusted himself and was able to walk into the cell with the use of the walker. Skin warm and dry. Gait with walker steady and brisk."

8

#### 4. Grievance 786

In a July 20, 2018 Memorandum, the MDOC advised Johnson of deficiencies in grievance later identified as Grievance 786, *i.e.*, Johnson did not attempt to resolve the issue or allow staff time to respond. *See* Memorandum (July 20, 2018) (ECF No. 56-17, PageID.870). The MDOC also noted that the grievance raised issues duplicative of those raised in other grievances and will be rejected according to policy. *Id*. The grievance at issue, Grievance 786, complains that PA Hoover did not address Johnson's medical kites dated July 11, 14, 15, and 16, 2018, and refused to assess Johnson on July 18, 2018. Grievance 786 at PageID.701. The grievance was not properly exhausted, being rejected at Step I. Grievance 786 at PageID.700. Furthermore, this grievance complains of incidents involving PA Hoover that are not alleged in the complaint.

#### 6. Grievance 890

The MDOC issued a similar memorandum on September 6, 2018, with respect to another incomplete grievance, Grievance 890, which was deficient because Johnson did not attempt to resolve the issue or allow staff time to respond. *See* Memorandum (September 6, 2018) (ECF No. 56-18, PageID.874). In Grievance 890, Johnson complained that he did not receive medication on August 29, 2018, because PA Hoover had discontinued it. Grievance 890 (ECF No. 46-7, PageID.661). This grievance was not properly exhausted, being rejected at Step I. *Id.* at PageID.662. Furthermore, this grievance complains of incidents that are not alleged in this lawsuit.

#### 7. Summary

Based on this record, Johnson did not properly exhaust his First and Eighth

9

Amendment claims against PA Hoover or Dr. Decker with respect to the alleged incidents of: April 30, 2018; June 14, 2018; June 18, 2018; or July 11, 2018. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted.[3]

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants PA Hoover and Dr. Decker's motion for summary judgment (ECF No. 46) be **GRANTED** and that this action be **TERMINATED**.

Dated:  February 1, 2022                          /s/ Ray Kent
                                                  United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[3] Defendants also sought summary judgment on the merits of the First and Eighth Amendment claims alleged against PA Hoover and Dr. Decker. Because Johnson did not exhaust any of the claims alleged against these two defendants, the undersigned did not address defendants' other arguments for summary judgment.

10